**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE | § | |
| | § | **CASE NO. 12-36187** |
| **ATP OIL & GAS CORPORATION** | § | |
| | § | **Chapter 11** |
| DEBTOR | § | |

_____

| | | |
|---|---|---|
| **MACQUARIE INVESTMENTS LLC** | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| **VERSUS** | § | **ADVERSARY NO. 12-_____** |
| | § | |
| **ATP OIL & GAS CORPORATION,** | § | |
| **CREDIT SUISSE AG, CAYMAN** | § | |
| **ISLANDS BRANCH, AND THE** | § | |
| **BANK OF NEW YORK MELLON** | § | |
| **TRUST COMPANY, N.A.** | § | |
| | § | |
| **DEFENDANTS** | § | |

## ORIGINAL COMPLAINT

Macquarie Investments LLC ("MILLC"), plaintiff herein, files this Original Complaint

("Complaint") seeking a declaratory judgment against ATP Oil & Gas Corporation, the debtor

and debtor in possession in the captioned bankruptcy case ("ATP" or "Debtor"), Credit Suisse

AG, Cayman Islands Branch ("Credit Suisse"), in its capacity as administrative agent and

collateral agent under that certain Act of Mortgage, Security Agreement, Financing Statement,

Fixture Filing and Assignment of Production effective as of June 18, 2010 and as DIP agent and

collateral agent under the debtor in possession financing facility, and The Bank of New York

Mellon Trust Company, N.A. ("BNY"), in its capacity as trustee and collateral agent under that

certain Act of Second Lien Mortgage, Security Agreement, Financing Statement, Fixture Filing

and Assignment of Production effective as of April 23, 2010.

## PARTIES

1.      Plaintiff MILLC is a Delaware limited liability company that is wholly owned by Macquarie Bank Limited, an Australian corporation with its principal place of business in Sydney, Australia.

2.      Defendant ATP is a Texas corporation with its principal place of business in Houston, Texas and is the Debtor, and debtor in possession in the captioned bankruptcy case (the "Bankruptcy Case").  The Debtor may be served with process by mailing a copy of the summons and Complaint to the Debtor at the address on the petition:  4600 Post Oak Place, Suite 100, Houston, Texas 77027 Attn: Albert L. Reese, Jr.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(g), service is also being made on the following counsel of record for the Debtor: Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas 77002.

3.      Defendant Credit Suisse is, upon information and belief, a branch of a foreign bank, and may be served in accordance with Federal Rule of Bankruptcy Procedure 7004(b)(3) by mailing a copy of the summons and Complaint to Credit Suisse AG, Cayman Islands Branch, One Madison Avenue, 2nd Floor, New York, NY 10010, Attention: Loan Operations – Boutique Management, Primary Contact: Nirmala Durgana.

4.      Defendant BNY is a national banking association that may be served with process in accordance with Federal Rule of Bankruptcy Procedure 7004(h) by mailing a copy of the summons and Complaint to its attorneys Charles A. Beckham, Jr., Haynes and Boone LLP, 1221 McKinney, Suite 2100, Houston, Texas 77010 and Richard B. Levin, Cravath, Swaine & Moore LLP, 825 8th Avenue, New York, NY 10019.

## PRELIMINARY FACT STATEMENT

5.      Prior to the commencement of this bankruptcy case by ATP, MILLC purchased certain overriding royalty interests from ATP (or, in the case of the Telemark I transaction, from Bluewater Industries LP ("Bluewater"), the original assignee from ATP of the Telemark I ORRI), with an aggregate purchase price of approximately $110 million.  The purchase price was paid in cash to ATP (or in the case of the Telemark I transaction, to Bluewater) on or around the closing dates of each transaction, and the conveyance documents were duly recorded and made effective as to third parties prior to the Petition Date.  In addition to making certain representations and warranties in the conveyance documents – including that the interests being transferred to MILLC were non-cost bearing overriding royalty interests that constituted real or immovable property rights under applicable law – ATP induced MILLC into executing the conveyance documents and purchasing the overriding royalty interests through the provision by several law firms of opinion letters stating their opinions, among others, that (a) the conveyances of the overriding royalty interests to MILLC were present conveyances of real or immovable property interests, (b) the execution and delivery of each Transaction Document by ATP do not, and the performance by ATP of its obligations thereunder will not constitute a breach of, or default under the Credit Agreement dated June 18, 2012, among ATP, the lenders named therein, and [Credit Suisse], as administrative and collateral agent [and with respect to the Gomez III transaction] the Indenture dated as of April 23, 2010, between ATP and The Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent, (c) with respect to the Telemark II transaction, the Telemark II ORRI does not constitute property of the estate within the meaning of Bankruptcy Code § 541(a), and with respect to the Gomez III Transaction, the Gomez III ORRI constitutes a "production payment" as defined in Bankruptcy Code § 101(42A)

3

and referred to in Bankruptcy Code § 541(b)(4)(B), and (d) with respect to the Telemark II and Gomez III Conveya nces, the Telemark II ORRI Conveyance and the Gomez III ORRI Conveyance do not constitute executory contracts or unexpired leases within the meaning of Bankruptcy Code § 365.

6.      Credit Suisse, which, as administrative agent and collateral agent for ATP's first lien credit facility (which did not permit additional financings at the time of the conveyances but did permit sales of certain hydrocarbon interests, including overriding royalty interests), executed lien subordinations, subordinating its liens and rights and those of the lenders under the first lien credit facility to the rights and interests of MILLC in, to, and upon the purchased overriding royalty interests and proceeds, as applicable.  Further, BNY, as trustee and collateral agent under ATP's second lien notes indenture, executed lien subordinations subordinating its liens and rights and those of the second lien noteholders to those of MILLC in, to, and upon the purchased overriding royalty interest and proceeds arising out of the Gomez Leases (defined below).[1]   ATP could not have been a party to financings ("disguised" or otherwise) without being in default of its obligations under its credit agreement(s) with its lenders, as it had no authority to borrow money with which to fund the capital development of its properties.   But, ATP could obtain funds through asset sale(s) (such as the ORRI conveyances it became party to) subject to certain limitations with the credit agreement(s) and still stay in compliance with the terms of its credit agreement(s).

7.      Yet, now, the Debtor and other parties in this bankruptcy case have taken the position that the conveyances of the overriding royalty interests to MILLC were not true

_____

[1]      The second lien notes indenture was not in existence as of the time of the conveyances to MILLC of the overriding royalty interests arising out of the Telemark Leases (defined below).

conveyances but were "disguised financings."[2]    Such an allegation, if made by the Debtor, would constitute an admission that the Debtor not only conspired with its law firms to fraudulently induce MILLC into purchasing overriding royalty interests through its intentionally false representations and warranties in the transaction documents and through the procuring of knowingly false "legal opinions" but also that each time it entered into one of these asset sales it was, at best, breaching its prepetition agreements with its senior secured lenders and with its noteholders, and, at worst, foisting a fraud on those lenders and MILLC by claiming to sell real property interests in the form of overriding royalty interests and net profit interests (which was permitted under the first lien credit facility) when, all the while, intending to enter into "disguised financings" – disguised from everyone but the Debtor (For example, MILLC has seen no evidence that prior to the bankruptcy case the Debtor reported to the SEC that by undertaking "disguised financings" it was breaching its credit facilitites).[3]

8.    Credit Suisse and BNY, being fully aware of the transaction documents pursuant to which MILLC obtained its overriding royalty interests, did not raise the issue of breach or default by ATP, but, instead, executed lien subordinations to accommodate the *sale* of the overriding royalty interests to MILLC and to others – sales that were permitted under the prepetition credit documents where financings were not.  That the millions of dollars paid to ATP by MILLC were for the purchase of a presently conveyed real property interest and were not loans to ATP is supported, additionally, by the fact that, under the transaction documents,

---

[2]    Whatever that means – MILLC asserts that the term has no legal significance.

[3]    It is, we assume, at least possible that the Debtor could allege that its responsible and control persons <u>and</u> its law firms cleverly conspired to fraudulently induce MILLC into buying the ORRI.  And, if it starts down that path, we further assume that the Debtor might potentially attempt to draw any number of other parties into its own circle of bad conduct as alleged co-conspirators—e.g., the lenders who subordinated their liens, the messengers who shuttled the transaction documents to closing, Elvis.  But MILLC does not believe—nor does it allege—that any of those parties had anything at all to do with the Debtor's current efforts to delegitimize perfectly legitimate transactions whose benefits it gladly accepted.

MILLC can look solely to the overrides for payment and satisfaction of the overriding royalty interest – ATP is not personally liable for the discharge of the overrides other than for the delivery and payment of the royalty payments, though ATP is not relieved of the obligation to respond in damages for any breach of any of its covenants, agreements, and obligations under the conveyance documents.

9.      Neither the Debtor nor Credit Suisse nor BNY should be permitted to ignore the inducements, representations, facts, documents, or applicable law which all point to a conclusion that the conveyances of the overriding royalty interests to MILLC were true conveyances of real or immovable property interests that were made effective and fully vested in MILLC and perfected as to third parties on the Effective Date of the conveyance documents and upon proper recordation under applicable law, all prior to the Petition Date such that (a) the overriding royalty interests are not property of the Debtor or its estate, (b) the conveyance transaction documents are not an executory contracts or leases subject to the provisions of Bankruptcy Code § 365, (c) MILLC's rights and interests in, to, and upon the overriding royalty interests and proceeds therefrom are superior to the liens of Credit Suisse and the first lien lenders and the liens of BNY and the second lien noteholders, (d) the liens granted under the various orders approving the Debtor's DIP financing motions (the "DIP Financing Orders") did not attach to the overriding royalty interests held by MILLC (or the proceeds thereof), or, alternatively, if they did attach to MILLC's overriding royalty interests, pursuant to the valid prepetition lien subordinations executed by Credit Suisse and BNY and the terms of the DIP Financing Orders, such liens, security interests, and rights are subordinate to any rights and interests that MILLC has in the overriding royalty interests and proceeds thereof, and (e) MILLC is entitled to retain all Telemark I, Telemark II, and Gomez III ORRI Proceeds remitted to it by ATP, whether pre- or

postpetition and to continue to receive all such ORRI Proceeds from ATP as and when they become due under the Telemark I, Telemark II, and Gomez III transaction documents.

10.     MILLC further submits that, even if the ORRI and Proceeds were determined to be property of the estate subject to MILLC's interests, the Debtor cannot use the ORRI or Proceeds under Bankruptcy Code § 363 because it cannot provide MILLC adequate protection of MILLC's interests in the subject ORRI and Proceeds (which, by their nature, are depleting assets).

<u>**JURISDICTION AND VENUE**</u>

11.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(10) and 1334 because this is a proceeding arising in or related to a case under the Bankruptcy Code.  However, whether this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K), (M), (O), or otherwise, this is a matter that "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" – such "other laws" being the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1333(a)(2)(A), 1349(b)(1) – and, therefore, the reference must be withdrawn pursuant to 28 U.S.C. § 157(d).  MILLC demands a trial by jury and does not consent to a trial by jury in the bankruptcy court.  MILLC does not consent to the entry of final orders by the bankruptcy court if it is determined that the bankruptcy court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

12.     Venue is proper in (i) this district pursuant to 28 U.S.C. § 1409(a) because the chapter 11 case to which this proceeding relates is pending in this district and (ii) in the United States District Court for the Eastern District of Louisiana, where the MILLC Litigation (defined below) relating to the overriding royalty interests and proceeds that are the subject of this

proceeding is currently pending but stayed as a result of the commencement of this bankruptcy case.[4]

## ADDITIONAL FACTS

13.     MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

14.     On August 17, 2012 (the "Petition Date"), ATP commenced the Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

15.     ATP continues to operate its business as debtor and debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

16.     Prior to the Petition Date, ATP conveyed to MILLC (a) directly or indirectly, certain overriding royalty interests in and to certain Outer Continental Shelf leases ("OCS Leases") located in federal waters in the Gulf of Mexico off the coast of, and adjacent to, Louisiana, specifically OCS Leases OCS-G 13198, OCS-G 16661, and OCS-G 24130, and (b) certain overriding royalty interests in production from certain OCS Leases located in federal waters in the Gulf of Mexico off the coast of, and adjacent to, Louisiana, specifically, OCS-G 14016, OCS-G 24104, and OCS-G 24105, together with the oil, gas, and other minerals produced from or attributable to those OCS Leases.

17.     OCS-G 13198 covers submerged lands situated in Atwater Valley Block 63, OCS-G 16661 covers submerged lands situated in Mississippi Canyon Block 941, and OCS-G 24130 covers submerged lands situated in Mississippi Canyon Block 942.[5] OCS-G 14016 covers

---

[4]     MILLC reserves all rights it may have to seek a transfer of venue of this proceeding to the United States District Court of the Eastern District of Louisiana.

[5]     OCS-G 13198, OCS-G 16661, and OCS-G 24130 shall collectively be referred to herein as the "Telemark Leases."

submerged lands situated in Mississippi Canyon Block 711, OCS-G 24104 covers submerged lands situated in Mississippi Canyon Block 754, and OCS-G 24105 covers submerged lands situated in Mississippi Canyon Block 755.[6]  Upon information and belief, ATP holds a 100% working interest in the Telemark Leases and in OCS-G 14016 and OCS-G 24105 and a 75% working interest in OCS-G 24104.

### The Transaction Documents and Prepetition Litigation

#### Telemark I Transaction Documents

18.    ATP is a party to that certain Farmout Agreement by and between ATP and Bluewater effective as of September 1, 2009 (the "Bluewater Farmout Agreement").   In connection therewith, pursuant to that certain Conveyance of Overriding Royalty Interest by and between ATP and Bluewater effective as of September 1, 2009 (as amended, modified, clarified, or supplemented, the "Bluewater ORRI Conveyance"),[7] ATP conveyed to Bluewater an overriding royalty interest in and to the hydrocarbons in and under and that may be produced from and that are attributable to ATP's interests in the Telemark Leases equal to the Net Profit Amounts (as that term is defined in the Bluewater ORRI Conveyance).  Section 1.2 of the Bluewater ORRI Conveyance provides that the conveyance of the overriding royalty interest is "a non-operating, non-expense-bearing limited overriding royalty interest" and an "absolute

---

[6]    OCS-G 14016, OCS-G 24104, and OCS-G 24105 shall collectively be referred to herein as the "Gomez Leases."

[7]    The Bluewater ORRI Conveyance was amended pursuant to that certain Amendment to Conveyance of Overriding Royalty Interest by and between ATP and Bluewater effective November 5, 2009.  Macquarie and ATP clarified the method of calculation of the ROR Amount (as defined in the Bluewater ORRI Conveyance) by a letter dated November 4, 2009 from MILLC to ATP that was acknowledged and agreed to by ATP.  A copy of the Bluewater Farmout Agreement and the Bluewater ORRI Conveyance (including the amendment and letter agreement) are attached hereto as **Exhibit A**, in globo.

conveyance of a presently vested real property interest, causing title to the Overriding Royalty to be vested in Grantee as of the Effective Date." Bluewater ORRI Conveyance, § 1.2.

19.     In addition, the Bluewater ORRI Conveyance provides that MILLC (as assignee of Bluewater) "shall look solely to the Net Profit Amounts for satisfaction and discharge of the Overriding Royalty" and that

> [ATP] shall not be personally liable for the payment and discharge of the Overriding Royalty other than for the delivery and payment of the Net Profit Amounts, if any, to [MILLC]; provided, however, that the foregoing shall not relieve [ATP] of the obligation to respond in damages for any breach by [ATP] of any of its covenants, agreements and obligations hereunder.

Bluewater ORRI Conveyance, § 1.4.

20.     The Bluewater ORRI Conveyance and the November 5, 2009 amendment thereto were duly recorded and made effective as to third parties under applicable law by the filing of same in the conveyance records of Lafourche, Plaquemines, St. Bernard, and Terrebonne Parishes and with the predecessor to the Bureau of Ocean Energy Management, the Minerals Management Service ("MMS"), on the dates and at the record numbers set forth on the Recording Schedule attached hereto as **Exhibit B**.

21.     Under ATP's existing credit agreement with its first lien lenders and Credit Suisse, as administrative agent and collateral agent, ATP would have been prohibited from borrowing from Bluewater to finance capital expenditures but would not have been prohibited from selling the Telemark I ORRI outright to Bluewater, subject to certain limitations, none of which are applicable here.

22.     Effective as of September 1, 2009, Credit Suisse, as Collateral Agent under ATP's first lien credit facility ("First Lien Credit Facility"), executed an Act of Subordination of

Lien (the "Telemark I Lien Subordination")[8] pursuant to which it subordinated all rights of the Collateral Agent and the first lien lenders ("First Lien Lenders") created under (a) that certain Act of Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production effective as of June 27, 2008 executed by ATP in favor of the Collateral Agent with respect to ATP's rights and interests in and to the Telemark Leases (the "Telemark First Lien Mortgage") and (b) that certain Deed of Trust, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production dated as of June 27, 2008, by ATP in favor of David H. Sweeney, Trustee for the benefit of Collateral Agent (the "Telemark First Lien Deed of Trust"), to the rights of the Farmee under the Bluewater ORRI Conveyance up to an aggregate amount of $35,000,000 plus the ROR Amount (as defined in the Bluewater ORRI Conveyance), "in cumulative amount paid or due to be paid or attributable to the interests of Farmee under the [Bluewater ORRI Conveyance]."

23.     Specifically, the Telemark I Lien Subordination provides, in pertinent part,

WHEREAS, Mortgagor [ATP] and [Bluewater] have entered into that certain Farmout Agreement dated effective as of September 1, 2009 (the "Farmout Agreement"), and, pursuant to the Farmout Agreement, Mortgagor has, among other things, executed and delivered to Farmee that certain Conveyance of Overriding Royalty Interest dated effective as of 12:01 a.m. on September 1, 2009, from Mortgagor to Farmee affecting Mortgagor's interests in the Subject Properties, an unexecuted copy of which is annexed hereto as **Exhibit B** (the "Conveyance");

and further that

Collateral Agent . . . does hereby agree that the lien, security interest, and other rights created by the Collateral Documents against the Subject Properties shall be and are hereby made subordinate, subject and inferior to the rights of Farmee as to the Subject Properties under the Conveyance up to the Aggregate Amount, and in the event of foreclosure under the Collateral Documents and the sale of the real or immovable and personal or movable property and fixtures subject to the

---

[8]     A copy of the Telemark I Lien Subordination is attached hereto as **Exhibit C**.

Collateral Documents pursuant to such foreclosure, it is agreed that <u>the rights of Farmee as to the Subject Properties under the Conveyance, up to the Aggregate Amount, shall in no way be affected thereby</u>.[9]

24.     A copy of the Telemark I Lien Subordination was filed and recorded in the mortgage records of Plaquemines Parish and with the MMS on the dates and at the record numbers set forth on Exhibit B.

25.     Pursuant to that certain Assignment of Farmout Interests and Overriding Royalty Interest by and between Bluewater and MILLC effective as of November 5, 2009 (the "<u>Bluewater/MILLC Assignment Agreement</u>"),[10] Bluewater assigned and conveyed to MILLC all of its rights, interests, and obligations under the Bluewater Farmout Agreement (except for its indemnity obligations and its obligations to contribute and perform Farmout Related Services (as defined in the Bluewater Farmout Agreement)) and its overriding royalty interest acquired pursuant to the Bluewater ORRI Conveyance.[11]

26.     On or about November 5, 2009, MILLC paid $35 million to Bluewater for the purchase of the Telemark I ORRI.

27.     The Bluewater/MILLC Assignment Agreement was duly recorded and made effective as to third parties under applicable law by the filing of same in the conveyance records of Lafourche, Plaquemines, St. Bernard and Terrebonne Parishes and with the MMS on the dates and at the record numbers set forth on Exhibit B.

---

[9]     Telemark I Lien Subordination, 1-2 (emphasis added).

[10]     A true and correct copy of the Bluewater/MILLC Assignment Agreement is attached hereto as **Exhibit D**.

[11]     The Bluewater/MILLC Assignment Agreement, the Bluewater Farmout Agreement, the Bluewater ORRI Conveyance, and all related documents shall hereinafter be referred to as the "<u>Telemark I Transaction Documents</u>." The present ownership by MILLC of the overriding royalty interest obtained pursuant to the Telemark I Transaction Documents shall hereinafter be referred to as the "<u>Telemark I ORRI</u>." The production proceeds relating to the Telemark I ORRI shall hereinafter be referred to as the "<u>Telemark I ORRI Proceeds</u>," and, with the Telemark I ORRI, the "<u>Telemark I ORRI and Proceeds</u>."

28.     ATP was obligated under the Telemark I Transaction Documents to remit to MILLC $2,243,145.88 in production proceeds owned by MILLC and attributable to MILLC's Telemark I ORRI by April 30, 2012.  Such proceeds have not been remitted by ATP.[12]  ATP was obligated under the Telemark I Transaction Documents to remit to MILLC $1,825,185.56 in production proceeds owned by MILLC and attributable to MILLC's Telemark I ORRI by May 30, 2012.  Such proceeds have not been remitted by ATP.[13]  ATP also failed to remit the Telemark I ORRI Proceeds due June 30, 2012[14] in the amount of $582,898.88 and July 30, 2012 in the amount of $716,021.19.  The Telemark I ORRI Proceeds in the amount of $1,112,305.56 due by August 30, 2012 were received by MILLC on or about October 4, 2012; however, $402,479.44 of the amounts due by August 30, 2012 have not been remitted by ATP.  The Telemark I ORRI Proceeds in the amount of $1,655,572.94 due by September 30, 2012 were received by MILLC on or about October 30, 2012, and the Telemark I ORRI Proceeds in the

---

[12]     In its Verified Complaint filed against ATP in the United States District Court for the Eastern District of Louisiana on August 7, 2012 ("Louisiana District Court"), commencing civil action no. 12-2032 (the "MILLC Litigation"), MILLC identified May 25, 2012 as the due date, which had been the date by which MILLC has customarily expected payment by ATP.  Per the terms of Section 3.1 of the Bluewater ORRI Conveyance, however, ATP was obligated to pay to MILLC, as assignee of Bluewater, the Telemark I ORRI Proceeds "within thirty (30) days next following the close of each calendar month ending after the Net Profit Date (each such calendar month being called a 'Payment Month') . . ." which would have been April 30, 2012, rather than May 25, 2012. Bluewater ORRI Conveyance, § 3.1.  To the extent that MILLC's prepetition allowance of additional time to ATP to turn over the Telemark I ORRI Proceeds is determined to be a waiver of the prepetition breaches of ATP's obligation to timely remit the Telemark I ORRI Proceeds, such waivers cannot be construed as a waiver of any subsequent breaches per the terms of § 6.6 of the Bluewater ORRI Conveyance, which states, "The waiver by any party hereto of a breach of any term or provision of this Conveyance shall not be construed as a waiver of any subsequent breach." Bluewater ORRI Conveyance, § 6.6.  This Court has entered an order with respect to post-petition amounts due to holders of ORRI and NPI (the "Royalty Payment Order," Dkt. # 191) which provides that, upon execution of a disgorgement agreement by the holder of the ORRI or NPI, ATP shall remit the post-petition ORRI and NPI payments in accordance with the terms of the relevant transaction documents.  MILLC executed the disgorgement agreement and transmitted it to counsel for ATP in accordance with the terms of the Royalty Payment Order on August 29, 2012.

[13]     See note 12, above, for an explanation of the differing "due dates" stated herein and in the Verified Complaint commencing the MILLC Litigation.

[14]     See note 12, above, for an explanation of the differing "due dates" stated herein and in the Verified Complaint commencing the MILLC Litigation.

amount of $1,461,680.63 due by October 30, 2012 were received by MILLC on or about November 30, 2012.

***Telemark II Transaction Documents***

29.     ATP, as Farmor, and MILLC, as Farmee, are parties to that certain Farmout Agreement effective as of January 1, 2010 (the "Telemark II Farmout Agreement").   In connection therewith, pursuant to that certain Conveyance of Overriding Royalty Interest by and between ATP and MILLC effective as of January 1, 2010 (the "Telemark II ORRI Conveyance"),[15] ATP conveyed to MILLC an overriding royalty interest in and to the hydrocarbons in and under and that may be produced from and that are attributable to ATP's interests in the Telemark Leases equal to the Net Profit Amounts (as that term is defined in the Telemark II ORRI Conveyance).  Section 1.2 of the Telemark II ORRI Conveyance provides that the conveyance of the overriding royalty interest is "a non-operating, non-expense-bearing limited overriding royalty interest" and an "absolute conveyance of a presently vested real property interest, causing title to the Overriding Royalty to be vested in Grantee as of the Effective Date." Telemark II ORRI Conveyance, § 1.2.[16]

---

[15]     True and correct copies of the Telemark II Farmout Agreement and the Telemark II ORRI Conveyance are attached hereto as **Exhibit E**, in globo.

[16]     The Telemark II Farmout Agreement, the Telemark II ORRI Conveyance, and all related documents shall hereinafter be referred to as the "Telemark II Transaction Documents."  The present ownership by MILLC of the overriding royalty interest obtained pursuant to the Telemark II Transaction Documents shall hereinafter be referred to as the "Telemark II ORRI."  The productions proceeds relating to the Telemark II ORRI shall hereinafter be referred to as the "Telemark II ORRI Proceeds," and, with the Telemark II ORRI, the "Telemark II ORRI and Proceeds."

30.     In addition, the Telemark II ORRI Conveyance provides that MILLC "shall look solely to the Net Profit Amounts for satisfaction and discharge of the Overriding Royalty" and that

> [ATP] shall not be personally liable for the payment and discharge of the Overriding Royalty other than for the delivery and payment of the Net Profit Amounts, if any, to [MILLC]; provided, however, that the foregoing shall not relieve [ATP] of the obligation to respond in damages for any breach by [ATP] of any of its covenants, agreements, and obligations hereunder.

Telemark II ORRI Conveyance, § 1.4.

31.     On or about March 12, 2010, MILLC paid approximately $25 million to ATP for the purchase of the Telemark II ORRI.

32.     The Telemark II ORRI Conveyance was duly recorded and made effective as to third parties by the filing of same in the conveyance records of Lafourche, Plaquemines, St. Bernard, and Terrebonne Parishes and with the MMS, on the dates and at the record numbers set forth on the Recording Schedule attached hereto as **Exhibit F**.

33.     Under ATP's existing credit agreement with its first lien lenders and Credit Suisse, as administrative agent and collateral agent, ATP would have been prohibited from borrowing from MILLC to finance capital expenditures but would not have been prohibited from selling the Telemark II ORRI outright to MILLC, subject to certain limitations, none of which are applicable here.

34.     To induce MILLC to enter into the Telemark II Transaction Documents, ATP caused its counsel to issue opinion letters to Macquarie regarding, among other things, the nature of the interests being conveyed to MILLC under the Telemark II Transaction Documents.  In an opinion letter dated March 12, 2010, issued by ATP's counsel, the law firm of Slattery Marino &

Roberts ("SMR") to MILLC (the "Telemark II SMR Opinion Letter"),[17] SMR stated, among other things, that

> [a]ssuming Louisiana law applies, the Overriding Royalty (as that term is defined in the ORRI Conveyance), constitutes an interest and real right in immovable property and the ORRI Conveyance constitutes an effective, present conveyance of an interest and real right in immovable property under the laws of the State of Louisiana as of the Effective Date (as that term is defined in the ORRI Conveyance).

Telemark II SMR Opinion Letter, at 3.  In an opinion letter dated March 12, 2010, issued by ATP's counsel, the law firm of Jackson Walker L.L.P. ("JW"), to MILLC (the "Telemark II JW Opinion Letter"),[18] JW gave the opinion that "[a]ssuming that Texas law is the governing law for the NPI Assignment, the Overriding Royalty constitutes a presently vested interest in real property, and the NPI Assignment constitutes an effective, present conveyance of a presently vested interest in real property." Telemark II JW Opinion Letter, at 4, ¶ 8.  In addition, JW gave the following opinion:

> If ATP were to become a debtor in a case under Title 11, United States Code (the "Bankruptcy Code"), the court, in a timely presented case, would conclude that, regardless of whether Texas law or Louisiana law governs the NPI Assignment, (a) the Overriding Royalty does not constitute property of the estate in bankruptcy of ATP within the meaning of Section 541(a) of the Bankruptcy Code, and (b) the NPI Assignment does not constitute an executory contract within the meaning of Section 365 of the Bankruptcy Code.

Telemark II JW Opinion Letter, at 4, ¶ 9.  JW further opined that

> The execution and delivery of each Transaction Document by ATP do not, and the performance by ATP of its obligations thereunder will not, (i) whether with or without the giving of notice or passage of time or both, conflict with or constitute a breach of, or default under, or result in the creation or imposition of any lien, charge, or encumbrance upon any property or assets of ATP pursuant to any Filed Exhibit, including, without limitation, the Credit Agreement dated June 18, 2010,

---

[17]     A copy of the Telemark II SMR Opinion Letter is attached hereto as **Exhibit G**.

[18]     A copy of the Telemark II JW Opinion Letter is attached hereto as **Exhibit H**.

among ATP, the lenders named therein, and Credit Suisse AG (formerly known as Credit Suisse), as administrative and collateral agent, . . . .

Telemark II JW Opinion Letter, at 3, ¶ 6.

35.    Effective as of January 1, 2010, Credit Suisse, as administrative agent and collateral agent under the First Lien Credit Facility, executed an Act of Subordination of Lien ("Telemark II Lien Subordination")[19] pursuant to which it subordinated all rights of the Collateral Agent and the First Lien Lenders created under (a) the Telemark First Lien Mortgage and (b) the Telemark First Lien Deed of Trust, to the rights of Farmee under the Telemark II ORRI Conveyance up to an aggregate amount of $25,000,000 "plus the amounts recoverable by Farmee under the [Telemark II ORRI Conveyance] prior to the occurrence of the Termination Point (as defined in the Telemark II ORRI Conveyance), in cumulative amount paid or due to be paid or attributable to the interests of Farmee under the [Telemark II ORRI Conveyance]."

36.    Specifically, the Telemark II Lien Subordination provides, in pertinent part,

WHEREAS, Mortgagor [ATP] and [MILLC] ("Farmee"), have entered into that certain Farmout Agreement dated effective as of January 1, 2010 (the "Farmout Agreement"), and, pursuant to the Farmout Agreement, Mortgagor has, among other things, executed and delivered to Farmee that certain Conveyance of Overriding Royalty Interest dated effective as of 12:01 a.m. on January 1, 2010, from Mortgagor to Farmee affecting Mortgagor's interests in the Subject Properties, an unexecuted copy of which is annexed hereto as ***Exhibit B*** (the "Conveyance");

and further that

Collateral Agent . . . does hereby agree that the lien, security interest, and other rights created by the Collateral Documents against the Subject Properties shall be and are hereby made subordinate, subject, and inferior to the rights of [MILLC] as to the Subject Properties under the Conveyance up to the Aggregate Amount, and in the event of foreclosure under the Collateral Documents and the sale of the real or immovable and personal or movable property and fixtures subject to the

---

[19]    A true and correct copy of the Telemark II Lien Subordination is attached hereto as **Exhibit I**.

Collateral Documents pursuant to such foreclosure, it is agreed that <u>the rights of [MILLC] as to the Subject Properties under the Conveyance, up to the Aggregate Amount, shall in no way be affected thereby</u>.[20]

37.    A copy of the Telemark II Lien Subordination was filed in the mortgage records of Plaquemines, Terrebonne, and Lafourche Parishes and with the MMS, as set forth on Exhibit F.

38.    ATP was obligated under the Telemark II Transaction Documents to remit to MILLC $1,031,847.10 in Telemark II ORRI Proceeds by April 30, 2012.  Such proceeds were not remitted by ATP.[21]   ATP was obligated under the Telemark II Transaction Documents to remit to MILLC $839,585.36 in Telemark II ORRI Proceeds by May 30, 2012.  Such proceeds were not remitted by ATP.[22]  ATP also failed to remit the Telemark II ORRI Proceeds due June 30, 2012[23] in the amount of $268,133.48 and July 30, 2012 in the amount of $329,369.75.  The Telemark II ORRI Proceeds in the amount of $511,660.56 due by August 30, 2012 were received

---

[20]    Telemark II Lien Subordination, 1-2 (emphasis added).

[21]    In its Verified Complaint filed against ATP in the Louisiana District Court, commencing the MILLC Litigation, MILLC identified May 25, 2012 as the due date, which had been the date by which MILLC customarily expected payment by ATP.  Per the terms of Section 3.1 of the Telemark II ORRI Conveyance, however, ATP was obligated to pay to MILLC the Telemark II ORRI Proceeds "within thirty (30) days next following the close of each calendar month ending after the Effective Date (each such calendar month being called a 'Payment Month') . . ." which would have been April 30, 2012, rather than May 25, 2012. Telemark II ORRI Conveyance, § 3.1.  To the extent that MILLC's prepetition allowance of additional time to ATP to turn over the Telemark II ORRI Proceeds is determined to be a waiver of the prepetition breaches of ATP's obligation to timely remit the Telemark II ORRI Proceeds, such waivers cannot be construed as a waiver of any subsequent breaches per the terms of § 6.6 of the Telemark II ORRI Conveyance, which states, "The waiver by any party hereto of a breach of any term or provision of this Conveyance shall not be construed as a waiver of any subsequent breach." Telemark II ORRI Conveyance, § 6.6.  This Court has entered an order with respect to post-petition amounts due to holders of ORRI and NPI (the "<u>Royalty Payment Order</u>," Dkt. # 191) which provides that, upon execution of a disgorgement agreement by the holder of the ORRI or NPI, ATP shall remit the post-petition ORRI and NPI payments in accordance with the terms of the relevant transaction documents.  MILLC executed the disgorgement agreement and transmitted it to counsel for ATP in accordance with the terms of the Royalty Payment Order on August 29, 2012.

[22]    See note 21, above, for an explanation of the differing "due dates" stated herein and in the Verified Complaint commencing the MILLC Litigation.

[23]    See note 21, above, for an explanation of the differing "due dates" stated herein and in the Verified Complaint commencing the MILLC Litigation.

by MILLC on or about October 4, 2012; however, $185,140.54 of the amounts due by August 30, 2012 have not been remitted by ATP.  The Telemark II ORRI Proceeds in the amount of $761,563.55 due by September 30, 2012 were received by MILLC on or about October 30, 2012, and the Telemark II ORRI Proceeds in the amount of $672,373.09 due October 30, 2012 were received by MILLC on or about November 30, 2012.

### *Gomez III Transaction Documents*

39.    Pursuant to that certain Conveyance of Overriding Royalty Interest by and between ATP and MILLC dated as of April 21, 2011 and effective as of March 1, 2011 (the "Gomez III ORRI Conveyance"),[24] ATP conveyed to MILLC an overriding royalty interest in and to the Gomez Leases equal to the Applicable Royalty Percentage (as that term is defined in the Gomez III ORRI Conveyance) of all Hydrocarbons (as defined in the Gomez III ORRI Conveyance) if, as, and when produced, saved, and sold from or attributable to the Gomez Leases.  Gomez III ORRI Conveyance, § 1.1.  Section 1.2 of the Gomez III ORRI Conveyance provides that the conveyance of the overriding royalty interest is "a non-operating, non-expense-bearing term overriding royalty interest" and § 6.7 provides that the conveyance is "an absolute conveyance of a real/immovable property interest, and, in the State of Louisiana, a real right." Gomez III ORRI Conveyance, §§ 1.2; 6.7.[25]

---

[24]    A true and correct copy of the Gomez III ORRI Conveyance is attached hereto as **Exhibit J**.

[25]    The Gomez III ORRI Conveyance, and all related documents shall hereinafter be referred to as the "Gomez III Transaction Documents."  The present ownership by MILLC of the overriding royalty interest obtained pursuant to the Gomez III Transaction Documents shall hereinafter be referred to as the "Gomez III ORRI."  The production proceeds relating to the Gomez III ORRI shall hereinafter be referred to as the "Gomez III ORRI Proceeds," and, with the Gomez III ORRI, the "Gomez III ORRI and Proceeds."

40.    In addition, the Gomez III ORRI Conveyance provides that MILLC "shall look solely to the Royalty Payments for satisfaction and discharge of the Term Overriding Royalty" and that

> [ATP] shall not be personally liable for the payment and discharge of the Term Overriding Royalty other than for the delivery and payment of Royalty Payments, if any, that accrue and become due and owing to [MILLC] under this Conveyance; provided, however, that the foregoing shall not relieve [ATP] of the obligation to respond in damages for any breach by [ATP] of any of its covenants, agreements, and obligations hereunder.

Gomez III ORRI Conveyance, § 1.4.

41.    On or about April 21, 2011, MILLC paid approximately $25 million to ATP for the purchase of the Gomez III ORRI.

42.    The Gomez III ORRI Conveyance was duly recorded and made effective as to third parties pursuant to applicable law by the filing of same in the conveyance records of Jefferson and Plaquemines Parishes and with the MMS, on the dates and at the record numbers set forth on the Recording Schedule attached hereto as **Exhibit K**.

43.    Under ATP's existing credit agreement with its first lien lenders and Credit Suisse, as administrative agent and collateral agent, ATP would have been prohibited from borrowing from MILLC to finance capital expenditures but would not have been prohibited from selling the Gomez III ORRI outright to MILLC, subject to certain limitations, none of which are applicable here.

44.    To induce MILLC to enter into the Gomez III Transaction Documents, ATP caused its counsel to issue opinion letters to MILLC regarding, among other things, the nature of the interests being conveyed to MILLC under the Gomez III Transaction Documents.  In an

opinion letter dated April 21, 2011, issued by ATP's counsel, SMR, to MILLC (the "Gomez III SMR Opinion Letter"),[26] SMR stated, among other things, that

> [a]ssuming Louisiana law applies, the Term Overriding Royalty (as that term is defined in the ORRI Conveyance), constitutes an interest and real right in immovable property and the ORRI Conveyance constitutes an effective, present conveyance of an interest and real right in immovable property under the laws of the State of Louisiana as of the Effective Time (as that term is defined in the ORRI Conveyance).

Gomez III SMR Opinion Letter, at 3, ¶ 3.  In an opinion letter dated April 21, 2011, issued by ATP's counsel, the law firm of Jackson Walker L.L.P. ("JW"), to MILLC (the "Gomez III JW Opinion Letter"),[27] JW gave the opinion that "[a]ssuming that Texas law is the governing law for the Conveyance, the Term Overriding Royalty constitutes a presently vested interest in real property, and the Conveyance constitutes an effective, present conveyance of a presently vested interest in real property." Gomez III JW Opinion Letter, at 4, ¶ 8.  In addition, JW gave the following opinion:

> If ATP were to become a debtor in a case under Title 11, United States Code (the "Bankruptcy Code"), the court, in a timely presented case, would conclude that, regardless of whether Texas law or Louisiana law governs the Conveyance, (a) the Term Overriding Royalty constitutes a "production payment" as defined in Section 101(42A) of the Bankruptcy Code and referred to in Section 541(b)(4)(B) of the Bankruptcy Code; and (b) the Conveyance does not constitute an executory contract or an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

Gomez III JW Opinion Letter, at 4, ¶ 9.  JW further opined that

> The execution and delivery of each Transaction Document by ATP do not, and the performance by ATP of its obligations thereunder will not, (i) whether with or without the giving of notice or passage of time or both, conflict with or constitute a breach of, or default under, or result in the creation or imposition of any lien, charge, or encumbrance upon any property or assets of ATP pursuant to any Filed Exhibit, including, without limitation, the Credit Agreement dated June 18, 2010,

---

[26]     A copy of the Gomez III SMR Opinion Letter is attached hereto as **Exhibit L**.

[27]     A copy of the Gomez III JW Opinion Letter is attached hereto as **Exhibit M**.

among ATP, the lenders named therein, and Credit Suisse AG, as Administrative Agent and Collateral Agent, and the Indenture dated as of April 23, 2010, between ATP and The Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent . . . .

Gomez III JW Opinion Letter, at 3-4, ¶ 6.

45.    In addition, ATP made a representation and warranty in the Purchase and Sale Agreement Purchase and Sale Agreement between ATP and MILLC dated April 21, 2011 ("PSA"), that

[t]he execution, delivery, and performance of this Agreement and the other Closing Documents [including the Gomez III ORRI Conveyance] to which Seller is a party and the consummation of the Transaction will not violate, be in conflict with, constitute a default under, require the consent of any third Person under, result in a breach of, or allow the acceleration of the performance required by: . . . (ii) any material agreement or instrument to which Seller is a party or by which Seller is bound, including but not limited to, the Mortgages and the credit agreements, indentures, and other documents executed in connection therewith . . . .

PSA, § 4.1(c).[28]

46.    Effective as of March 1, 2011, Credit Suisse, as Collateral Agent under ATP's First Lien Credit Facility, executed an Act of Subordination of Lien ("Gomez III First Lien Subordination")[29] pursuant to which it subordinated all rights of the Collateral Agent and the First Lien Lenders created under that certain Act of Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production effective as of June 18, 2010 executed by ATP in favor of the Collateral Agent with respect to ATP's rights and interests in and to the Gomez Leases, to the rights of MILLC under the Gomez III ORRI Conveyance up to an aggregate amount of $25,000,000 "plus all other amounts owed to [MILLC] under the [Gomez

---

[28]    A true and correct copy of the PSA is attached hereto as **Exhibit N**.

[29]    A true and correct copy of the Gomez III First Lien Subordination is attached hereto as **Exhibit O**.

III ORRI Conveyance] in cumulative amount paid or due to be paid or attributable to the interests of [MILLC] under the [Gomez III ORRI Conveyance]."

47.     Specifically, the Gomez III First Lien Subordination provides, in pertinent part,

WHEREAS, Mortgagor [ATP] and [MILLC] ("Purchaser"), have entered into that certain Purchase and Sale Agreement dated as of April 21, 2011 (the "Purchase and Sale Agreement"), and, pursuant to the Purchase and Sale Agreement, Mortgagor has, among other things, executed and delivered to Purchaser that certain Conveyance of Term Overriding Royalty Interest dated effective as of 12:01 a.m., Central Time, on March 1, 2011, from Mortgagor to Purchaser affecting Mortgagor's interests in the Subject Properties, an unexecuted copy of which is annexed hereto as *Exhibit B* (the "Conveyance");

and further that

Collateral Agent . . . does hereby agree that the lien, security interest, and other rights created by the Collateral Documents against the Subject Properties shall be and are hereby made subordinate, subject, and inferior to the rights of [MILLC] as to the Subject Properties under the Conveyance up to the Aggregate Amount, and in the event of foreclosure under the Collateral Documents and the sale of the real or immovable and personal or movable property and fixtures subject to the Collateral Documents pursuant to such foreclosure, it is agreed that the rights of [MILLC] as to the Subject Properties under the Conveyance, up to the Aggregate Amount, shall in no way be affected thereby.[30]

48.     A copy of the Gomez III First Lien Subordination was filed in the mortgage records of Jefferson and Plaquemines Parishes and with the MMS, as set forth on Exhibit K.

49.     In addition, effective as of March 1, 2011, The Bank of New York Mellon Trust Company, N.A. ("BNY"), as trustee and collateral agent under the Debtor's Indenture dated April 23, 2012 (the "Second Lien Notes Indenture") for the second lien noteholders ("Second Lien Noteholders"), executed an Act of Subordination of Lien ("Gomez III Second Lien Subordination")[31] pursuant to which it subordinated all rights of BNY, as trustee and collateral

---

[30]     Gomez III First Lien Subordination, 1-2 (emphasis added).

[31]     A true and correct copy of the Gomez III Second Lien Subordination is attached hereto as **Exhibit P**.

agent, and the Second Lien Noteholders created under that certain Act of Second Lien Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production effective as of April 23, 2010 executed by ATP in favor of BNY as Collateral Agent with respect to ATP's rights and interests in and to the Gomez Leases, to the rights of MILLC under the Gomez III ORRI Conveyance up to an aggregate amount of $25,000,000 "plus all other amounts owed to [MILLC] under the [Gomez III ORRI Conveyance] in cumulative amount paid or due to be paid or attributable to the interests of [MILLC] under the [Gomez III ORRI Conveyance]."

50.     Specifically, the Gomez III Second Lien Subordination provides, in pertinent part,

WHEREAS, Mortgagor [ATP] and [MILLC] ("Purchaser"), have entered into that certain Purchase and Sale Agreement dated as of April 21, 2011 (the "Purchase and Sale Agreement"), and, pursuant to the Purchase and Sale Agreement, Mortgagor has, among other things, executed and delivered to Purchaser that certain Conveyance of Term Overriding Royalty Interest dated effective as of 12:01 a.m., Central Time, on March 1, 2011, from Mortgagor to Purchaser affecting Mortgagor's interests in the Subject Properties, an unexecuted copy of which is annexed hereto as ***Exhibit B*** (the "Conveyance");

and further that

Collateral Agent . . . does hereby agree that the lien, security interest, and other rights created by the Collateral Documents against the Subject Properties shall be and are hereby made subordinate, subject, and inferior to the rights of [MILLC] as to the Subject Properties under the Conveyance up to the Aggregate Amount, and in the event of foreclosure under the Collateral Documents and the sale of the real or immovable and personal or movable property and fixtures subject to the Collateral Documents pursuant to such foreclosure, it is agreed that the rights of [MILLC] as to the Subject Properties under the Conveyance, up to the Aggregate Amount, shall in no way be affected thereby.[32]

---

[32]     Gomez III Second Lien Subordination, 1-2 (emphasis added).

51.     A copy of the Gomez III Second Lien Subordination was filed in the mortgage records of Jefferson and Plaquemines Parishes and with the MMS, as set forth on the attached Exhibit N.

52.     ATP was obligated under the Gomez III ORRI Conveyance to remit to MILLC $1,006,267.21 in production proceeds owned by MILLC and attributable to MILLC's Gomez III ORRI by May 31, 2012.  Such proceeds have not been remitted by ATP.  ATP was obligated under the Gomez III ORRI Conveyance to remit to MILLC $814,410.80 in production proceeds owned by MILLC and attributable to MILLC's Gomez III ORRI by June 30, 2012.  Such proceeds have not been remitted by ATP.  ATP also failed to remit the Gomez III ORRI Proceeds due July 31, 2012 in the amount of $605,216.82.  The Gomez III ORRI Proceeds in the amount of $388,995.08 due August 31, 2012 were received by MILLC on or about September 10, 2012, the Gomez III ORRI Proceeds in the amount of $479,068.89[33] due September 28, 2012 were received by MILLC on or about October 4, 2012, the Gomez III ORRI Proceeds in the amount of $647,280.36 due October 31, 2012 were received by MILLC on or about October 30, 2012, and the Gomez III ORRI Proceeds in the amount of $506,825.95 due November 30, 2012 were received by MILLC on or about November 30, 2012.

### *Prepetition Litigation and Writs of Sequestration*

53.     ATP neither remitted the Telemark I ORRI Proceeds, Telemark II ORRI Proceeds, and Gomez III ORRI Proceeds (collectively the "ORRI Proceeds") due for May and June, 2012, nor provided a written response stating a reasonable cause for failing to remit the May and June ORRI Proceeds within thirty days of written notice.

---

[33]     The amount actually received was $473,353.31 as a result of ATP withholding $5,715.58 to offset an overpayment the previous month.

54.     MILLC filed suit against ATP on August 7, 2012, in the United States District Court for the Eastern District of Louisiana ("Louisiana District Court"), commencing civil action no. 12-2032 (the "MILLC Litigation").  The suit was filed more than thirty days after receipt by ATP of applicable notices.

55.      In the Verified Complaint in the MILLC Litigation, MILLC asserts causes of action against ATP for breach of contract and for turnover of the Telemark I ORRI Proceeds, Telemark II ORRI Proceeds, and Gomez III ORRI Proceeds (collectively, "MILLC ORRI Proceeds") for May and June, in addition to statutory damages under La. R.S. 31:212.21-23, as well as causes of action in revendication and conversion under Louisiana law.  MILLC asserts in the Verified Complaint that the aggregate amount of MILLC ORRI Proceeds unlawfully withheld by ATP through the date of June 25, 2012 is $7,930,441.61 and seeks an amount equal to double the amount of unlawfully withheld MILLC ORRI Proceeds ($15,860,883.22), plus interest as allowed under applicable state law, and attorneys' fees and costs.

56.     MILLC also filed an ex parte motion for writ of sequestration seeking seizure and sequestration of the MILLC ORRI and Proceeds during the pendency of the litigation, until MILLC received the full amount owed pursuant to the Telemark I ORRI, Telemark II ORRI, and Gomez III ORRI, plus applicable damages, interest, attorneys' fees and costs.

57.     On August 10, 2012, the Louisiana District Court issued its *Ex Parte Order Issuing Writ of Sequestration* in the MILLC Litigation, ordering the issuance of a writ of sequestration directing the U.S. Marshal to seize and sequester the MILLC ORRI and Proceeds. The writ of sequestration (the "MILLC Writ") [LDC P-9] was issued on August 13, 2012, and was served by a U.S. Marshal on ATP, through its agent for service of process in Louisiana, at 11:24 a.m. on August 17, 2012.  While proceeding upon the MILLC Writ is stayed, the MILLC

Writ was valid and effective prior to the commencement of the bankruptcy case and remains so, with the MILLC Writ attached to and maintaining its effect under applicable law.

58.     As of the Petition Date, the MILLC Litigation was stayed by the operation of the automatic stay under Bankruptcy Code § 362.

### *Postpetition Events*

59.     On the Petition Date, the Debtor filed a debtor in possession financing motion (the "DIP Financing Motion") [P-21] in which the Debtor sought entry of interim and final orders approving a "roll-up" debtor in possession financing arrangement with certain lenders under the Debtor's prepetition "first lien" secured credit facility (the "Prepetition First Lien Facility")[34] comprised of a $250 million "New Money Facility" and a "Refinancing Facility" of up to an aggregate principal amount of $367.6 million (the "DIP Financing Facility").  In connection therewith, the Debtor sought approval of, among other things, the granting of priming liens with respect to the DIP Collateral[35] in favor of the lenders under the proposed DIP Financing Facility

---

[34]     The Debtor was a party to that certain Credit Agreement, dated June 18, 2010, as amended and restated by that certain Amended and Restated Credit Agreement, dated as of March 9, 2012 and certain other loan documents and security instruments related to, referenced in or executed in connection therewith (the "First Lien Documents") with the lenders party thereto (the "First Lien Lenders") and Credit Suisse AG, as administrative agent and collateral agent (the "First Lien Agent"), on behalf of itself and the First Lien Lenders, pursuant to which ATP granted to Credit Suisse, as administrative agent and collateral agent, on behalf of itself and the First Lien Lenders,  liens and security interests in, to, and upon certain of its oil and gas assets (the "First Lien Lender Liens") .  The Debtor is also party to that certain Indenture dated as of April 23, 2010, the "Second Lien Notes Indenture," and, together with all other loan and security documents related to, referenced in or executed in connection with the Prepetition Second Lien Notes Indenture, the "Second Lien Documents") with the holders of the notes issued thereunder (collectively, the "Second Lien Noteholders") and BNY, as trustee and collateral agent (the "Second Lien Trustee") on behalf of itself and the Second Lien Noteholders, pursuant to which ATP granted to BNY, as trustee and collateral agent, on behalf of itself and the Second Lien Noteholders, liens and security interests in, to, and upon certain of its oil and gas assets ("Second Lien Noteholder Liens"), which liens were junior in priority to the First Lien Lender Liens.

[35]     DIP Collateral was defined in the DIP Financing Motion to include all of the Debtor's now owned or after acquired tangible and intangible property, including, among other things, all of the Debtor's (a) Hydrocarbon Interests and Hydrocarbons (noted to be defined in the Prepetition First Lien Credit Agreement that is not attached to the DIP Financing Motion), mineral rights, as-extracted collateral, and royalty interests and (b)(i) upon the entry of the interim order, all of the proceeds of any avoidance action brought pursuant to Bankruptcy Code § 549, and, (ii) upon the entry of the final order, the proceeds of any other avoidance action brought under chapter 5 of the Bankruptcy Code, and the Debtor's rights under Bankruptcy Code § 506(c) and the proceeds thereof.  DIP Financing Motion, p. 13.

(the "DIP Lenders") pursuant to Bankruptcy Code § 364(d)(1) subject to a carve-out, senior prior liens on DIP Collateral constituting prepetition collateral, and, with respect to DIP Collateral not constituting prepetition collateral, valid, enforceable, unavoidable and timely perfected statutory liens.[36]

60.     The Debtor also sought approval of adequate protection liens on the DIP Collateral in favor of (i) Credit Suisse as the First Lien Agent, for the benefit of itself and the First Lien Lenders, junior to the DIP Liens (the "First Lien Adequate Protection Liens"), and (ii) BNY as the Second Lien Trustee, for the benefit of itself and the Second Lien Noteholders, junior to the First Lien Adequate Protection Liens (the "Second Lien Adequate Protection Liens").

61.     On August 20, 2012, MILLC (along with other parties), filed an objection to the DIP Financing Motion [P-78].  In the objection, MILLC objected to the granting of any priming lien or other lien in connection with the DIP Financing Facility on the bases that (i) such priming liens would be in derogation of the prepetition lien subordination agreements that had been executed by the prepetition first lien lenders and second lien noteholders in favor of MILLC (which subordination agreements are recognized under Bankruptcy  Code § 510(a)), and (ii) the Debtor did not offer and could not offer adequate protection of MILLC's interests if priming liens were to be granted and, therefore, such priming liens would not be permissible under Bankruptcy Code § 364.  MILLC noted that it was

> generally not opposed to the proposed DIP financing transaction; *provided that*, the Debtor and the proposed DIP Lenders agree that none of the liens or rights to be granted under the proposed Interim DIP Order or the Final DIP Order shall in any way attach to the ORRI and Proceeds and that the ORRI Owners' rights and interests under the Transaction Documents are superior to any lien, claim, or

---

[36]     DIP Financing Motion, pp. 12-14.

interest granted to DIP Lenders, Prepetition First Lien Lenders, Second Lien Noteholders, or to any other party or pursuant to the interim or final DIP orders.

Objection, p. 24.

62.     To resolve the MILLC's objection, the parties, including the Debtor, Credit Suisse, and counsel for the group of the Second Lien Noteholders, negotiated and/or agreed to language to be included in a *Supplemental Order on Debtor's Emergency Motion for Order Approving Post-Petition Financing and Related Relief* ("Supplemental DIP Financing Order") [P-128], which supplemented and modified the interim order approving the DIP Financing Motion on an interim basis (the "Interim DIP Financing Order"):

> Notwithstanding anything in the Financing Order to the contrary, the priority rights of the holders of ORRIs and of NPIs are neither primed nor altered by the Financing Order.  To the extent that a prepetition subordination agreement exists in favor of a holder of an ORRI or an NPI, that prepetition subordination agreement applies to the rights of the DIP Agent and the lenders on the DIP on the same basis as it would have applied to the holders of the prepetition first liens that were the subject of the subordination agreements.  The rights of the holders of an ORRI or an NPI against the second lien holders are similarly governed by this paragraph. The Court expresses no views on the interpretation of the subordination agreement.

Supplemental DIP Financing Order, p. 4, ¶ 19.  Nearly identical language was included in the final order approving the DIP Financing Motion (the "Final DIP Financing Order") [P-440]:

> Notwithstanding anything in this Final Order to the contrary, the priority rights of the holders of ORRIs and of NPIs are neither primed nor altered by this Final Order.  To the extent that a prepetition subordination agreement exists in favor of a holder of an ORRI or an NPI, that prepetition subordination agreement applies to the rights of the DIP Agent and the DIP Lenders on the same basis as it would have applied to Prepetition First Lien Agent and/or Prepetition First Lien Secured Creditors that were the subject of the subordination agreements.  The rights of the holders of an ORRI or an NPI against the Prepetition Second Lien Holders are similarly governed by this paragraph.  The Court expresses no views on the interpretation of the subordination agreement.

Final DIP Financing Order, p. 54, ¶ 45.

63.     The Debtor subsequently filed a supplemental motion for the entry of an order approving additional postpetition financing to finance certain attorneys' fees and costs incurred by the Second Lien Noteholders (the "Second Lien Professional Loans") as adequate protection of the Second Lien Noteholders' interests in connection with and as a part of the DIP Financing Facility ("Supplemental DIP Motion") [P-714].  The Court entered an order ("Supplemental DIP Financing Order II") approving the Supplemental DIP Motion, in which it approved, among other things, the granting of security interests and liens in the DIP Collateral securing the Second Lien Professional Loans (the "Second Lien Professional Liens") and providing that such Second Lien Professional Liens "shall have the same priority as, and shall be equal and ratable with, the DIP Liens that secure the Refinanced Obligations." Supplemental DIP Financing Order II, p. 5, ¶ 5.

64.     Because the ORRI and Proceeds owned by MILLC are not property of the Debtor or the estate, the ORRI and Proceeds owned by MILLC are not part of the DIP Collateral in, to, and upon which (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, were granted DIP Liens, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, were granted First Lien Adequate Protection Liens, and (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, were granted Second Lien Adequate Protection Liens and/or Second Lien Professional Liens.  Thus, neither the DIP Liens, nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the MILLC ORRI and Proceeds.

65.     On August 17, 2012, the Debtor filed its *Debtor's Emergency Motion for an Order Authorizing (1) Payment of Funds Attributable to Overriding Royalty Interests in the Ordinary Course of Business and (2) Payment of Funds Attributable to Net Profits Interests Subject to Further Order of the Court Requiring Disgorgement Thereof Pursuant to (A) Sections 105(a), 363(b) and 541(a) of the Bankruptcy Code and (B) the Procedures for Complex Chapter 11 Bankruptcy Cases for the United States Bankruptcy Court for the Southern District of Texas* (the "ORRI Payment Motion") [P-15], in which the Debtor sought authority to pay certain overrides ("ORRI") and what it termed net profits interests (or "NPI").  The Debtor identified the Gomez III ORRI as an ORRI but identified the Telemark I and II ORRI as NPI.[37]  The Debtor stated in the ORRI Payment Motion that it "believes" the ORRI and proceeds thereof are not property of the estate and that the NPI may or may not be property of the estate.

66.     On August 23, 2012, the Bankruptcy Court entered an *Order Regarding Debtor's Emergency Motion for an Order Authorizing (1) Payment of Funds Attributable to Overriding Royalty Interests in the Ordinary Course of Business and (2) Payment of Funds Attributable to Net Profits Interests Subject to Further Order of the Court Requiring Disgorgement Thereof Pursuant to (A) Sections 105(a), 363(b) and 541(a) of the Bankruptcy Code and (B) the Procedures for Complex Chapter 11 Bankruptcy Cases for the United States Bankruptcy Court for the Southern District of Texas* (the "Payment Order") approving the ORRI Payment Motion on the terms set forth in the Payment Order.

---

[37]     ORRI Payment Motion, Exhibit A.  Regardless of the Debtor's nomenclature, the Telemark I ORRI Conveyance and the Telemark II ORRI Conveyance are each conveyances of "an overriding royalty interest."  *See* Bluewater ORRI Conveyance, §§ 1.1 and 1.2; Telemark II ORRI Conveyance, §§ 1.1 and 1.2.  MILLC's contractual agreement to modify the way in which ATP is to calculate the amount of cash attributable to those overriding royalty interests each month does not change the fundamental property characteristics of those interests. The real property interests created by those conveyances start their lives as overriding royalty interests and remain so in all ways relevant to determining whether those overriding royalty interests are part of the Debtor's estate (and they are not).

**CAUSES OF ACTION**

***COUNT I – DECLARATORY JUDGMENT – Telemark I ORRI and Proceeds Are Neither Property of the Estate Nor Executory Contract or Lease Interests Subject to the Provisions of Bankruptcy Code § 365***

67.    MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

68.    This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

69.    MILLC seeks a declaratory judgment declaring that (i) the Telemark I ORRI Conveyance effected a present conveyance of a property interests (the Telemark I ORRI) to Bluewater, which was assigned to MILLC, prior to the Petition Date, and was made effective as to third parties prior to the Petition Date, such that the Telemark I ORRI and Proceeds are not property of the Debtor or of the bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if the Telemark I ORRI and Proceeds are determined to be property of the estate subject to lien rights or other rights or interests of MILLC, the Debtor cannot use the Telemark I ORRI and Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Telemark I ORRI and Proceeds, and (iii) MILLC is entitled to retain all remittances of Telemark I ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Telemark I ORRI Proceeds in accordance with the term of the Telemark I Transaction Documents.

70.    Additionally, MILLC seeks a declaratory judgment that neither the Bluewater ORRI Conveyance nor the Bluewater/MILLC Assignment Agreement are executory contracts or unexpired leases that the Debtor can reject under Bankruptcy Code § 365.

## *The Telemark I ORRI is an Interest in Immovable Property Owned By MILLC Such That the Telemark I ORRI and Proceeds Are Not Property of the Debtor's Bankruptcy Estate*

71.     The Telemark I Transaction Documents provide that the transfer to MILLC by ATP of the overriding royalty interest is a conveyance of a presently vested real or immovable property interest that is a non-operating, non-expense-bearing overriding royalty interest free of lease operating costs.   Under Louisiana law, which is the applicable law with respect to MILLC's rights under the Telemark I Transaction Documents,[38] mineral rights, including overriding royalty interests and net profits interests, are considered to be incorporeal immovables or real property interests.[39]   Louisiana's law recognizing overriding royalty interests and net profits interests as immovable or real property interests is not inconsistent with federal law **as evidenced by the position taken by the United States in** ***Shell Petroleum, Inc. v. U.S.***, **2008 WL 2714252 \*6 (S.D. Tex. Jul. 3, 2008), in which the United States stipulated and agreed to the fact that "OCS leases are real property interests that are sold by the Minerals Management Service (the "MMS") at public auction."** Thus, under the Telemark I

---

[38]      Because the causes of action arise out of or in connection with the OCS Leases, the law of the adjacent state – here, Louisiana – applies, regardless of any choice of law under the parties' contract(s). *See* 43 U.S.C. § 1333(a)(2)(A); *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990)("We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary."); *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)("Congress declared that '[t]o the extent that they are applicable and not inconsistent with [federal law],' the laws of the adjacent states are 'the law[s] of the United States' on the OCS.")(citing 43 U.S.C. § 1333(a)(2)(A)); *Chevron U.S.A., Inc. v. Santa Fe Snyder Corp.*, 69 Fed.Appx. 658, 2003 WL 21355979 \*2 (5th Cir. May 22, 2003)("Because the agreement originates from a federal lease on the outer continental shelf-off the coast of Louisiana-the choice-of-law provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1333(a)(2)(A), 1349(b)(1), apply, so construction of the agreement is governed by Louisiana law to the extent such law is not inconsistent with federal law.")(citing *Union Texas Petroleum*, 895 F.2d at 1050).

[39]      *See* La. R.S. 31:18 ("A mineral right is an incorporeal immovable."); La. R.S. 31:171 (which references a co-lessee of an oil and gas lease's right to create dependent rights such as overriding royalty interest, production payments, and net profits interests); La. R.S. 10:9-102(d)(13) (which defines "mineral rights" as "a real right governed by Title 31 of the Louisiana Revised Statutes of 1950, including mineral servitudes, mineral leases, mineral royalties, overriding royalties, production payments, and net profits interests"); La. R.S. 10:9-102(d)(16) (which defines "real property" to include, among other things, "mineral rights"); *see also CLK Co., L.L.C. v. CXY Energy, Inc.*, 719 So.2d 1098, 1101 (La. App. 4 Cir. 1998)(mineral rights, including overriding royalty interests, are incorporeal immovables under Louisiana law).

Transaction Documents and under nonbankruptcy law, the overriding royalty interest conveyed to Bluewater and then assigned to MILLC is an immovable (or real) property interest.  But, whether or not the Telemark I ORRI Conveyance conveyed an immovable (or real) property interest, the conveyance and assignment were of a property interest and the conveyance and assignment were recorded and made effective as to third parties prior to the Petition Date.  Thus, the Telemark I ORRI and Proceeds are not property of the Debtor or of the estate under Bankruptcy Code § 541(a).

72.     Even if the Telemark I ORRI and Proceeds could be considered property of the estate under Bankruptcy Code § 541(a) (and, they cannot), the Telemark I ORRI (and, thus the Telemark I ORRI Proceeds) would be excluded from property of the estate pursuant to Bankruptcy Code § 541(b)(4).

73.     Bankruptcy Code § 541(b)(4) provides that property of the estate does not include

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that –

(A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement;  and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

(B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title.

11 U.S.C. § 541(b)(4).  The Telemark I ORRI conveyed to Bluewater by ATP and then assigned to MILLC is a present interest in "liquid or gaseous hydrocarbons" that was conveyed pursuant

to a written agreement directly related to a farmout agreement – the Bluewater Farmout Agreement. Thus, the Telemark I ORRI and Proceeds are not property of the estate under Bankruptcy Code § 541(b)(4).

74.     Because the Telemark I ORRI and Proceeds are not property of the estate, MILLC is entitled to retain all remittances of Telemark ORRI Proceed received pre- or postpetition and to continue to receive from ATP monthly remittances of the Telemark I ORRI Proceeds due under the Telemark I Transaction Documents.

75.     Any suggestion by any party that the purchase by Bluewater of the Telemark I ORRI was anything other than the purchase of an immovable (real) property interest would not only fly in the face of the facts, both federal and state law, representations and actions of the Debtor, its counsel, and its lenders in executing the transaction documents and the described subordinations, but would subject (at least) the Debtor and its control persons and representatives and agents (personally) to claims of fraud, fraud in the inducement, conspiracy to commit fraud or fraud in the inducement, and many other claims and causes of action that MILLC fully reserves.[40]

76.     If, in the face of the facts and documents that clearly require findings (i) that MILLC received an assignment of the Telemark I ORRI (an immovable (or real) property interest) from Bluewater prior to the Petition Date and (ii) that the conveyance and assignment were recorded and made effective as to third parties prior to the Petition Date such that the Telemark I ORRI and Proceeds are property of MILLC and not the ATP estate, the Court

---

[40]     In addition to civil liability, criminal liability could apply to, "Any person who knowingly and willfully . . . (2) makes any false statement, representation, or certification in any application, record, report, or other document filed or required to be maintained under this subchapter . . . [who] shall, upon conviction, be punished by a fine of not more than $100,000, or by imprisonment for not more than ten years, or both."  43 U.S.C. § 1350(c).  Further, "[w]henever a corporation or other entity is subject to prosecution under subsection (c) of this section, any officer or agent of such corporation or entity who knowingly and willfully authorized, ordered, or carried out the proscribed activity shall be subject to the same fines or imprisonment, or both, as provided for under subsection (c) of this section." 43 U.S.C. § 1350(d).

determines that the transaction with Bluewater, instead, was a loan to ATP (where ATP is not even personally obligated on the "loan"), then the Telemark I ORRI and Proceeds would be subject to MILLC's perfected rights and interests in its ORRI and Proceeds as collateral. Because the Debtor cannot offer MILLC adequate protection of its interests in the Telemark I ORRI and Proceeds (necessarily a depleting asset), the Debtor cannot use the Telemark I ORRI and Proceeds under Bankruptcy Code §363, and MILLC is entitled to all Telemark I ORRI Proceeds to protect the value of its interests in the Telemark I ORRI and Proceeds (both already collected, held but not paid as of and after the commencement of the bankruptcy case, and as such are generated in the future).

### *The Bluewater ORRI Conveyance Is Not An Executory Contract or Lease That Is Subject to the Provisions of Bankruptcy Code § 365*

77.     The Bluewater ORRI Conveyance is not an executory contract or lease interest that is subject to the provisions of Bankruptcy Code § 365.  The Bluewater ORRI Conveyance effected a conveyance of an immovable or real property interest (the Telemark I ORRI) to Bluewater that was subsequently conveyed to MILLC pursuant to the Telemark I ORRI Conveyance prior to the Petition Date and such conveyance was properly made effective as to third parties by filing in the appropriate parishes and with the MMS.  There are no material obligations under the Bluewater ORRI Conveyance that remain to be performed by MILLC (as assignee of Bluewater), and, therefore, the agreement is neither executory nor an unexpired lease subject to the provisions of Bankruptcy Code § 365.

### *COUNT II – DECLARATORY JUDGMENT – The First Lien Lender Liens in the Telemark I ORRI and Proceeds Are Subordinate to the Rights and Interests of MILLC in the Telemark I ORRI and Proceeds*

78.     MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

79.     This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

80.     MILLC seeks a declaratory judgment that the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Telemark I ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark I ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as against third parties.

81.     Pursuant to the terms of the Telemark I Lien Subordination, the liens, security interests, and other rights of Credit Suisse, for the benefit of itself and the First Lien Lenders, in, to, and upon the Telemark I ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark I ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as against third parties.

### COUNT III – DECLARATORY JUDGMENT – The  Liens Granted By the Debtor Pursuant to the DIP Financing Orders Did Not Attach to the Telemark I ORRI and Proceeds, or, Alternatively, Such Liens Are Subordinate to the Rights and Interests of MILLC In The Telemark I ORRI and Proceeds

82.     MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

83.     This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

84.     MILLC seeks a declaratory judgment that neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Telemark I ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders, including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Telemark I ORRI and Proceeds.

85.     Because the Telemark I ORRI and Proceeds are owned by MILLC and are not property of the Debtor or the estate, the Telemark I ORRI and Proceeds are not part of the DIP Collateral in, to, and upon which (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, were granted DIP Liens, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, were granted First Lien Adequate Protection Liens, and (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, were granted Second Lien Adequate Protection Liens and/or Second Lien Professional Liens pursuant to the DIP Financing Orders. Thus, neither the DIP Liens, nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Telemark I ORRI and Proceeds.

86.     Alternatively, by virtue of the Telemark I Lien Subordination and the terms of the DIP Financing Orders, if any lien, right, or interest granted to (a) Credit Suisse, as DIP Agent

and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP

Lenders, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien

Documents, for the benefit of itself and certain First Lien Lenders, or (c) BNY, as trustee and

collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien

Noteholders, pursuant to the DIP Financing Orders attached to the Telemark I ORRI and

Proceeds, such liens, rights, and interests, including, but not limited to, the DIP Liens, the First

Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second

Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the

Telemark I ORRI and Proceeds.

### COUNT IV – DECLARATORY JUDGMENT – Telemark II ORRI and Proceeds Are Neither Property of the Estate Nor Executory Contract or Lease Interests Subject to the Provisions of Bankruptcy Code § 365

87.     MILLC incorporates all prior paragraphs into this section to the extent not

inconsistent as if fully set forth herein.

88.     This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought." 28 U.S.C. § 2201.

89.     MILLC seeks a declaratory judgment declaring that (i) the Telemark II ORRI

Conveyance effected a present conveyance of a property interests (the Telemark II ORRI) to

MILLC, prior to the Petition Date, that was made effective as to third parties prior to the Petition

Date, such that the Telemark II ORRI and Proceeds are not property of the Debtor or of the

bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if

the Telemark II ORRI and Proceeds are determined to be property of the estate subject to lien

rights or other rights or interests of MILLC, the Debtor cannot use the Telemark II ORRI and

Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Telemark II ORRI and Proceeds, and (iii) MILLC is entitled to retain all remittances of Telemark II ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Telemark II ORRI Proceeds in accordance with the term of the Telemark II Transaction Documents.

90.     Additionally, MILLC seeks a declaratory judgment that the Telemark II ORRI Conveyance is not an executory contract or unexpired lease that the Debtor can reject under Bankruptcy Code § 365.

### *The Telemark II ORRI is an Interest in Immovable Property Owned By MILLC Such That the Telemark II ORRI and Proceeds Are Not Property of the Debtor's Bankruptcy Estate*

91.     The Telemark II Transaction Documents provide that the transfer to MILLC by ATP of the overriding royalty interest is a conveyance of a presently vested real or immovable property interest that is a non-operating, non-expense-bearing overriding royalty interest free of lease operating costs.   Under Louisiana law, which is the applicable law with respect to MILLC's rights under the Telemark II Transaction Documents,[41] mineral rights, including overriding royalty interests and net profits interests, are considered to be incorporeal immovables or real property interests.[42]   Louisiana's law recognizing overriding royalty interests and net profits interests as immovable or real property interests is not inconsistent with federal law **as evidenced by the position taken by the United States in *Shell Petroleum, Inc. v. U.S.*, 2008 WL 2714252 \*6 (S.D. Tex. Jul. 3, 2008), in which the United States stipulated and agreed to the fact that "OCS leases are real property interests that are sold by the Minerals**

---

[41]        See Notes 38 and 39.

[42]        See Notes 38 and 39.

**Management Service (the "MMS") at public auction."**   Thus, under the Telemark II Transaction Documents and under nonbankruptcy law, the overriding royalty interest conveyed to MILLC is an immovable (or real) property interest.  But, whether or not the Telemark II ORRI Conveyance conveyed an immovable (or real) property interest, it conveyed a property interest and that conveyance was recorded and made effective as to third parties prior to the Petition Date.  Thus, the Telemark II ORRI and Proceeds are not property of the Debtor or of the estate under Bankruptcy Code § 541(a).

92.     Because the Telemark II ORRI and Proceeds are not property of the estate, MILLC is entitled to retain all remittances of Telemark II ORRI Proceeds received pre- or postpetition and to continue to receive from ATP monthly remittances of the Telemark II ORRI Proceeds due under the Telemark II Transaction Documents.

93.     Any suggestion by any party that the purchase by MILLC of the Telemark II ORRI was anything other than the purchase of an immovable (real) property interest would not only fly in the face of the facts, both federal and state law, representations and actions of the Debtor, its counsel, and its lenders in executing the transaction documents and the described subordinations, but would subject (at least) the Debtor and its control persons and representatives and agents (personally) to claims of fraud, fraud in the inducement, conspiracy to commit fraud or fraud in the inducement, and many other claims and causes of action that MILLC fully reserves.[43]

---

[43]     In addition to civil liability, criminal liability could apply to, "Any person who knowingly and willfully . . . (2) makes any false statement, representation, or certification in any application, record, report, or other document filed or required to be maintained under this subchapter . . . [who] shall, upon conviction, be punished by a fine of not more than $100,000, or by imprisonment for not more than ten years, or both."  43 U.S.C. § 1350(c).  Further, "[w]henever a corporation or other entity is subject to prosecution under subsection (c) of this section, any officer or agent of such corporation or entity who knowingly and willfully authorized, ordered, or carried out the proscribed activity shall be subject to the same fines or imprisonment, or both, as provided for under subsection (c) of this section." 43 U.S.C. § 1350(d).

94.     If, in the face of the facts and documents that clearly require findings (i) that MILLC received a conveyance of the Telemark II ORRI (an immovable (or real) property interest) from ATP in exchange for the payment of $25 million to ATP prior to the Petition Date and (ii) that the conveyance was recorded and made effective as to third parties prior to the Petition Date such that the Telemark II ORRI and Proceeds are property of MILLC and not the ATP estate, the Court determines that the transaction with MILLC instead, was a loan of $25 million to ATP (where ATP is not even personally obligated on the "loan"), then the Telemark II ORRI and Proceeds would be subject to MILLC's perfected rights and interests in its ORRI and Proceeds as collateral.   Because the Debtor cannot offer MILLC adequate protection of its interests in the Telemark II ORRI and Proceeds (necessarily a depleting asset), the Debtor cannot use the Telemark II ORRI and Proceeds under Bankruptcy Code §363, and MILLC is entitled to all Telemark II ORRI Proceeds to protect the value of its interests in the Telemark II ORRI and Proceeds (both already collected, held but not paid as of and after the commencement of the bankruptcy case, and such as are generated in the future).

### *The Telemark II ORRI Conveyance Is Not An Executory Contract or Lease Subject to the Provisions of Bankruptcy Code § 365*

95.     The Telemark II ORRI Conveyance is not an executory contract or lease that is subject to the provisions of Bankruptcy Code § 365.   Rather, as ATP through its counsel opined so as to induce MILLC into execution of the Telemark II ORRI Conveyance, (a) the Telemark II ORRI Conveyance constitutes a conveyance of a vested  immovable or real property interest (the Telemark II ORRI) to MILLC prior to the Petition Date[44] and such conveyance was made effective as to third parties by filing in the appropriate parishes and with the MMS, and (b) the Telemark II ORRI Conveyance "does not constitute an executory contract within the meaning of

---

[44]     See Telemark II JW Opinion Letter at Exhibit H; Telemark II SMR Opinion Letter at Exhibit G.

Section 365 of the Bankruptcy Code."[45] In any event, because MILLC paid to ATP $25 million in cash at the time of the transaction for a present interest in property conveyed to it and has no remaining material obligations to perform under the Telemark II ORRI Conveyance, the Telemark II ORRI Conveyance is neither executory nor an unexpired lease subject to the provisions of Bankruptcy Code § 365.

### *COUNT V – DECLARATORY JUDGMENT – The First Lien Lender Liens in the Telemark II ORRI and Proceeds Are Subordinate to the Rights and Interests of MILLC in the Telemark II ORRI and Proceeds*

96.     MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

97.     This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

98.     MILLC seeks a declaratory judgment that the lien, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Telemark II ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as against third parties.

99.     Pursuant to the terms of the Telemark II Lien Subordination, the liens, security interests, and other rights of Credit Suisse, for the benefit of itself and the First Lien Lenders, in, to, and upon the Telemark II ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds, regardless of the nature of those

---

[45]     See Telemark II JW Opinion Letter at Exhibit H.

rights or whether such the conveyance of such rights from ATP to MILLC was made effective as against third parties.

***COUNT VI – DECLARATORY JUDGMENT – The  Liens Granted By the Debtor Pursuant to the DIP Financing Orders Did Not Attach to the Telemark II ORRI and Proceeds, or, Alternatively, Such Liens Are Subordinate to the Rights and Interests of MILLC In The Telemark II ORRI and Proceeds***

100.    MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

101.    This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

102.    MILLC seeks a declaratory judgment that neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Financing Orders attached to the Telemark II ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders, including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds.

103.    Because the Telemark II ORRI and Proceeds are owned by MILLC and are not property of the Debtor or the estate, the Telemark II ORRI and Proceeds are not part of the DIP Collateral in, to, and upon which (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, were granted DIP Liens, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, were granted First Lien Adequate

Protection Liens, and (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, were granted Second Lien Adequate Protection Liens and/or Second Lien Professional Liens pursuant to the DIP Financing Orders. Thus, neither the DIP Liens, nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Telemark II ORRI and Proceeds.

104.    Alternatively, by virtue of the Telemark II Lien Subordination and the terms of the DIP Financing Orders, if any lien, right, or interest granted to (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, or (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, pursuant to the DIP Financing Orders attached to the Telemark II ORRI and Proceeds, such liens, rights, and interests, including, but not limited to, the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds.

### COUNT VII –DECLARATORY JUDGMENT – *Gomez III* ORRI and Proceeds Are Neither Property of the Estate Nor Executory Contract or Lease Interests Subject to the Provisions of Bankruptcy Code § 365

105.    MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

106.   This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

107.   MILLC seeks a declaratory judgment declaring that (i) the Gomez III ORRI Conveyance effected a present conveyance of a property interests (the Gomez III ORRI) to MILLC, prior to the Petition Date, that was made effective as to third parties prior to the Petition Date, such that the Gomez III ORRI and Proceeds are not property of the Debtor or of the bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if the Gomez III ORRI and Proceeds are determined to be property of the estate subject to lien rights or other rights or interests of MILLC, the Debtor cannot use the Gomez III ORRI and Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Gomez III ORRI and Proceeds, and (iii) MILLC is entitled to retain all remittances of Gomez III ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Gomez III ORRI Proceeds in accordance with the term of the Gomez III Transaction Documents..

108.   Additionally, MILLC seeks a declaratory judgment that the Gomez III ORRI Conveyance is not an executory contract or unexpired lease that the Debtor can reject under Bankruptcy Code § 365.

### *The Gomez III ORRI is an Interest in Immovable Property Owned By MILLC Such That the Gomez III ORRI and Proceeds Are Not Property of the Debtor's Bankruptcy Estate*

109.   The Gomez III Transaction Documents provide that the transfer to MILLC by ATP of the overriding royalty interest is a conveyance of a presently vested real or immovable property interest that is a non-operating, non-expense-bearing overriding royalty interest free of

46

lease operating costs. Under Louisiana law, which is the applicable law with respect to MILLC's rights under the Gomez III Transaction Documents,[46] mineral rights, including overriding royalty interests and net profits interests, are considered to be incorporeal immovables or real property interests.[47] Louisiana's law recognizing overriding royalty interests and net profits interests as immovable or real property interests is not inconsistent with federal law **as evidenced by the position taken by the United States in _Shell Petroleum, Inc. v. U.S._, 2008 WL 2714252 \*6 (S.D. Tex. Jul. 3, 2008), in which the United States stipulated and agreed to the fact that "OCS leases are real property interests that are sold by the Minerals Management Service (the "MMS") at public auction."** Thus, under the Gomez III Transaction Documents and under nonbankruptcy law, the overriding royalty interest conveyed by ATP to MILLC is an immovable (or real) property interest.[48] But, whether or not the Gomez III ORRI Conveyance conveyed an immovable (or real) property interest, the Gomez III ORRI Conveyance conveyed a present property interest and that conveyance was recorded and made effective as to third parties prior to the Petition Date. Thus, the Gomez III ORRI and Proceeds are not property of the Debtor or of the estate under Bankruptcy Code § 541(a).

110. Even if the Gomez III ORRI and Proceeds could be considered property of the estate under Bankruptcy Code § 541(a) (and, they cannot), the Gomez III ORRI (and, thus the Gomez III ORRI Proceeds) would be excluded from property of the estate pursuant to Bankruptcy Code § 541(b)(4).

---

[46] See Notes 38 and 39.

[47] See Notes 38 and 39.

[48] Although MILLC is unaware of any specific statutory provision in federal law regarding the nature of the rights of a lessee of an OCS Lease, the United States has taken the position in a recent case in the United States District Court for the Southern District of Texas that "OCS leases are real property interests that are sold by the Minerals Management Service (the "MMS") at public auction" by agreeing to same as a finding of fact. _Shell Petroleum, Inc. v. U.S._, 2008 WL 2714252 \*6 (S.D. Tex. Jul. 3, 2008).

111.    Bankruptcy Code § 541(b)(4) provides that property of the estate does not include

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that –

      (A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement;  and

      (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

      (B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

      (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title.

11 U.S.C. § 541(b)(4).

112.    The Gomez III ORRI is a present interest in "liquid or gaseous hydrocarbons" that was transferred pursuant to a written conveyance of a production payment (as defined in Bankruptcy Code § 541(42A)) to MILLC, which does not participate in the operation of the property from which the production payment was transferred (the Gomez Leases).  Thus, the Gomez III ORRI and Proceeds are not property of the estate under Bankruptcy Code § 541(b)(4). Because the Gomez III ORRI and Proceeds are not property of the estate, MILLC is entitled to retain all remittances of Gomez III ORRI Proceeds received pre- or postpetition and to continue to receive from ATP monthly remittances of the Gomez III ORRI Proceeds due under the Gomez III Transaction Documents.

113.    Any suggestion by any party that the purchase by MILLC of the Gomez III ORRI was anything other than the purchase of an immovable (real) property interest would not only fly in the face of the facts, both federal and state law, representations and actions of the Debtor, its

counsel, and its lenders in executing the transaction documents and the described subordinations, but would subject (at least) the Debtor and its control persons and representatives and agents (personally) to claims of fraud, fraud in the inducement, conspiracy to commit fraud or fraud in the inducement, and many other claims and causes of action that MILLC fully reserves.[49]

114.    If, in the face of the facts and documents that clearly require findings (i) that MILLC a conveyance of the Gomez III ORRI (an immovable (or real) property interest) from ATP in exchange for the payment of $25 million to ATP prior to the Petition Date and (ii) that the conveyance was recorded and made effective as to third parties prior to the Petition Date such that the Gomez III ORRI and Proceeds are property of MILLC and not the ATP estate, the Court determines that the transaction with MILLC instead, was a loan of $25 million to ATP (where ATP is not even personally obligated on the "loan"), then the Gomez III ORRI and Proceeds would be subject to MILLC's perfected rights and interests in its ORRI and Proceeds as collateral.  Because the Debtor cannot offer MILLC adequate protection of its interests in the Gomez III ORRI and Proceeds (necessarily a depleting asset), the Debtor cannot use the Gomez III ORRI and Proceeds under Bankruptcy Code §363, and MILLC is entitled to all Gomez III ORRI Proceeds to protect the value of its interests in the Gomez III ORRI and Proceeds (both already collected, held but not paid as of and after the commencement of the bankruptcy case, and as such are generated in the future).

---

[49]    In addition to civil liability, criminal liability could apply to, "Any person who knowingly and willfully . . . (2) makes any false statement, representation, or certification in any application, record, report, or other document filed or required to be maintained under this subchapter . . . shall, upon conviction, be punished by a fine of not more than $100,000, or by imprisonment for not more than ten years, or both."  43 U.S.C. § 1350(c).  Further, "[w]henever a corporation or other entity is subject to prosecution under subsection (c) of this section, any officer or agent of such corporation or entity who knowingly and willfully authorized, ordered, or carried out the proscribed activity shall be subject to the same fines or imprisonment, or both, as provided for under subsection (c) of this section." 43 U.S.C. § 1350(d).

### *The Gomez III ORRI Is Not An Executory Contract or Lease Interest Subject to the Provisions of Bankruptcy Code § 365*

115.     The Gomez III ORRI is not an executory contract or lease interest that is subject to the provisions of Bankruptcy Code § 365.  Rather, as ATP through its counsel opined so as to induce MILLC into execution of the Gomez III ORRI Conveyance, (a) the Gomez III ORRI Conveyance constitutes a conveyance of a vested immovable or real property interest (the Gomez III ORRI) to MILLC prior to the Petition Date,[50] and such conveyance was made effective as to third parties by filing in the appropriate parishes and with the MMS, and (b) the Gomez III ORRI Conveyance "does not constitute an executory contract or an unexpired lease within the meaning of Section 365 of the Bankruptcy Code."[51]  In any event, because MILLC paid to ATP $25 million in cash at the time of the transaction for a present interest in property conveyed to it and has no remaining material obligations to perform under the Gomez III ORRI Conveyance, the Gomez III ORRI Conveyance is neither executory nor an unexpired lease subject to the provisions of Bankruptcy Code § 365.

### *COUNT VIII – DECLARATORY JUDGMENT -- The First Lien Lender Liens and the Second Lien Noteholder Liens in the Gomez III ORRI and Proceeds Are Subordinate to the Rights and Interests of MILLC in the Gomez III ORRI and Proceeds*

116.     MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

117.     This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

---

[50]     *See* Gomez III SMR Opinion Letter at Exhibit L, and Gomez III JW Opinion Letter at Exhibit M.

[51]     *See* Gomez III JW Opinion Letter, p. 4, ¶ 9.

118.    MILLC seeks a declaratory judgment that the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as to third parties.

119.    MILLC seeks a declaratory judgment that the liens, security interests, or other rights that BNY, as trustee and collateral agent, for the benefit of itself and the Second Lien Noteholders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as to third parties.

120.    Pursuant to the terms of the Gomez III First Lien Subordination, the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as to third parties.

121.    Pursuant to the terms of the Gomez III Second Lien Subordination, the liens, security interests, or other rights that BNY, as trustee and collateral agent, for the benefit of itself and the Second Lien Noteholders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and

Proceeds, regardless of the nature of those rights or whether the conveyance of such rights by ATP to MILLC was made effective as to third parties..

### COUNT IX – DECLARATORY JUDGMENT – The  Liens Granted By The Debtor Pursuant to the DIP Financing Orders Did Not Attach to the Gomez III ORRI and Proceeds, or, Alternatively, Such Liens Are Subordinate to the Rights and Interests of MILLC In The Gomez III ORRI and Proceeds

122.    MILLC incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

123.    This Court has the power, pursuant to 28 U.S.C. § 2201, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

124.    MILLC seeks a declaratory judgment that neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Gomez III ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders, including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds.

125.    Because the Gomez III ORRI and Proceeds are owned by MILLC and are not property of the Debtor or the estate, the Gomez III ORRI and Proceeds are not part of the DIP Collateral in, to, and upon which (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, were granted DIP Liens, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, were granted First Lien Adequate

Protection Liens, and (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, were granted Second Lien Adequate Protection Liens and/or Second Lien Professional Liens pursuant to the DIP Financing Orders. Thus, neither the DIP Liens nor the First Lien Adequate Protection Liens nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Gomez III ORRI and Proceeds.

126.    Alternatively, by virtue of the Gomez III First Lien Subordination and the Gomez III Second Lien Subordination and the terms of the DIP Financing Orders, if any lien, right, or interest granted to (a) Credit Suisse, as DIP Agent and collateral agent under the DIP Financing Documents, for the benefit of itself and the DIP Lenders, (b) Credit Suisse, as administrative agent and collateral agent under the First Lien Documents, for the benefit of itself and certain First Lien Lenders, or (c) BNY, as trustee and collateral agent under the Second Lien Documents, for the benefit of itself and the Second Lien Noteholders, pursuant to the DIP Financing Orders attached to the Gomez III ORRI and Proceeds, such liens, rights, and interests, including, but not limited to, the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds.

## RESERVATION OF RIGHTS

127.    MILLC reserves all rights as against the Debtor and any and all third parties and persons (including, but not limited to, Al Reese, Keith Godwin, Paul Bulmahn, Leland Tate and the law firms that gave opinion letters in connection with the conveyances of the ORRI to MILLC) to assert claims, rights, and causes of action for legal or equitable relief in any way

53

relating to damages or harm incurred by MILLC relating to the ORRI and Proceeds, including, but not limited to damages previously alleged for failure to pay ORRI Proceeds despite proper demand under applicable law, conversion by the Debtor through actions of third party individuals, fraud in the inducement and through other actions, false allegations as may be made within this proceeding, and/or damages or harm to MILLC related to any finding by this Court that the ORRI and Proceeds are property of the bankruptcy estate and not property of MILLC.

## JURY DEMAND

128.    MILLC demands a trial by jury and does not consent to a trial by jury in the bankuptcy court.

## PRAYER FOR RELIEF

WHEREFORE, MILLC respectfully requests that the Court enter a judgment pursuant to 28 U.S.C. § 2201 (1) under Count I (a) declaring that (i) the Bluewater ORRI Conveyance effected a present conveyance of a property interest (the Telemark I ORRI) to Bluewater, which interest was assigned to MILLC, prior to the Petition Date and made effective as to third parties prior to the Petition Date such that the Telemark I ORRI and Proceeds are not property of the Debtor or of the bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if the Telemark I ORRI and Proceeds are determined to be property of the estate subject to lien rights or other rights or interests of MILLC, the Debtor cannot use the Telemark I ORRI and Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Telemark I ORRI and Proceeds, and (iii) that MILLC is entitled to retain all remittances of Telemark I ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Telemark I ORRI Proceeds in accordance with the terms of the Telemark I Transaction Documents; and (b) declaring that the Bluewater

54

ORRI Conveyance is not an executory contract or unexpired lease that can be rejected by the Debtor under Bankruptcy Code § 365;  (2) under Count II declaring that the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Telemark I ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark I ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as against third parties; (3) under Count III declaring that neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Telemark I ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders, including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Telemark I ORRI and Proceeds; (4) under Count IV (a) declaring that (i) the Telemark II ORRI Conveyance effected a present conveyance of a property interest (the Telemark II ORRI) to MILLC prior to the Petition Date that was made effective as to third parties prior to the Petition Date such that the Telemark II ORRI and Proceeds are not property of the Debtor or of the bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if the Telemark II ORRI and Proceeds are determined to be property of the estate subject to lien rights or other rights or interests of MILLC, the Debtor cannot use the Telemark II ORRI and Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Telemark II ORRI and

Proceeds, and (iii) that MILLC is entitled to retain all remittances of Telemark II ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Telemark II ORRI Proceeds in accordance with the terms of the Telemark II Transaction Documents; and (b) declaring that the Telemark II ORRI Conveyance is not an executory contract or unexpired lease that can be rejected by the Debtor under Bankruptcy Code § 365; (5) under Count V declaring that that the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Telemark II ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as against third parties; (6) under Count VI declaring that  neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Telemark II ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders, including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the rights and interests of MILLC in, to, and upon the Telemark II ORRI and Proceeds; (7) under Count VII (a) declaring that (i) the Gomez III ORRI Conveyance effected a present conveyance of a property interest (the Gomez III ORRI) to MILLC prior to the Petition Date that was made effective as to third parties prior to the Petition Date such that the Gomez III ORRI and Proceeds are not property of the Debtor or of the bankruptcy estate of the Debtor, ATP, but, instead are property of MILLC; or, alternatively (ii) if the Gomez III ORRI

and Proceeds are determined to be property of the estate subject to lien rights or other rights or interests of MILLC, the Debtor cannot use the Gomez III ORRI and Proceeds under Bankruptcy Code § 363 because the Debtor cannot provide MILLC adequate protection of its interests in the Gomez III ORRI and Proceeds, and (iii) that MILLC is entitled to retain all remittances of Gomez III ORRI Proceeds received by the Debtor prepetition and postpetition and, as well, to continue to receive all Gomez III ORRI Proceeds in accordance with the terms of the Gomez III Transaction Documents; and (b) declaring that the Gomez III ORRI Conveyance is not an executory contract or unexpired lease that can be rejected by the Debtor under Bankruptcy Code § 365; (8) under Count VIII declaring that (a) the liens, security interests, or other rights that Credit Suisse, as administrative agent and collateral agent, for the benefit of itself and the First Lien Lenders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as to third parties and (b) the liens, security interests, or other rights that BNY, as trustee and collateral agent, for the benefit of itself and the Second Lien Noteholders, may have in, to, and upon the Gomez III ORRI and Proceeds are subordinate to the rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds, regardless of the nature of those rights or whether the conveyance of such rights from ATP to MILLC was made effective as to third parties; and (9) under Count IX declaring that that neither the DIP Liens nor the First Lien Adequate Protection Liens, nor the Second Lien Adequate Protection Liens, nor the Second Lien Professional Liens, nor any other lien granted to any party in the DIP Collateral under the DIP Financing Orders attached to the Gomez III ORRI and Proceeds, or, alternatively, that any liens, rights, or security interests that were granted by the Debtor under the DIP Financing Orders,

including, but not limited to the DIP Liens, the First Lien Adequate Protection Liens, the Second

Lien Adequate Protection Liens, and the Second Lien Professional Liens, are subordinate to the

rights and interests of MILLC in, to, and upon the Gomez III ORRI and Proceeds; and granting

such other relief, both at law and in equity, to which MILLC is justly entitled.

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM,**
**DUPLANTIS & EAGAN, LLC**


By: _/s/ Louis M. Phillips_____
Louis M. Phillips, T.A. (La. Bar No. 10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, Louisiana 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com

and

Courtney S. Lauer (Texas. Bar. No. 24043771)
1980 Post Oak Blvd., Suite 1800
Houston, Texas 77056
Telephone: (713) 333-5500
Facsimile: (713) 333-5501
Email: clauer@gordonarata.com

***Attorneys for Macquarie Investments LLC***